1
2
3
4
5
6
7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    BENJAMIN ROBERT GALLEGOS,                No.  2:22-cv-01790-DAD-EFB (PC)

12                          Plaintiff,

13          v.                                 ORDER AND FINDINGS AND
                                               RECOMMENDATIONS
14    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
15    REHABILITATION, et al.,

16                          Defendants.

17

18          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

19    U.S.C. § 1983.  ECF No. 14.  On March 10, 2023, pursuant to 28 U.S.C. § 1915A(a), the court

20    determined that plaintiff's first amended complaint (FAC) alleged a potentially cognizable

21    Fourteenth Amendment due process claim against defendant, California Department of

22    Corrections and Rehabilitation (CDCR) correctional counselor Ebert[1] for violation of plaintiff's

23    right to marry.  ECF Nos. 16, 19.  Plaintiff elected to proceed on this claim, ECF No. 20, and the

24    court ordered dismissal of all other claims and defendants and struck plaintiff's improperly filed

25    addendum.  ECF Nos. 21 (striking ECF No. 17), 22, 23, 29.

26    ////

27          [1]  Ebert's full title appears to be "Correctional Counselor II (Specialist), Litigation
      Coordinator."  ECF No. 36 at 5; *see also* ECF No. 32-1 at 2.
28

                                               1

1    Defendant, relying on state court records, now moves to dismiss the FAC under Rule

2    12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiff cannot allege facts

3    sufficient to establish a due process claim that his right to marry was substantially burdened, that

4    plaintiff has in fact been able to marry and therefore his request for injunctive relief is moot, and

5    that defendant is entitled to qualified immunity.  ECF No. 32 (defendant's motion); ECF No. 33

6    (plaintiff's response); ECF No. 34 (defendant's reply); *see also* ECF No. 35 (plaintiff's

7    "opposition" to ECF No. 32); ECF No. 43 (plaintiff's "response" to ECF No. 34); ECF No. 46

8    (plaintiff's second "opposition" to ECF No. 32); ECF No. 47 (defendant's motion to strike *inter*

9    *alia* ECF Nos. 43 and 46).

10    Also before the court are the following motions and other pleadings filed by plaintiff:  (1)

11    a "request to cite new defendants," ECF No. 36 & ECF No. 41 (defendant's response); (2) a

12    motion for preliminary injunction, ECF No. 38 & ECF No. 42 (defendant's response); (3) a

13    second "request to cite new defendants," ECF No. 44; (4) a motion and proposed order for

14    injunctive relief, ECF Nos. 45, 47; (5) a request for judicial notice, ECF No. 49; and (6) a motion

15    to consolidate this case with another lawsuit plaintiff has filed, ECF No. 53 & ECF No. 54

16    (defendant's response).

17    Finally, before the court is defendant's motion to strike: (1) ECF No. 43 as an

18    unauthorized sur-reply; and (2) ECF Nos. 44, 45, 46, and 47 as nearly duplicative filings.  ECF

19    No. 48.

20    I.    The FAC

21    Plaintiff's FAC alleges that defendant, a litigation coordinator at the prison, deliberately

22    and with a retaliatory motive interfered with plaintiff's right to marry by refusing without

23    justification to sign a "Notary document as a witness," a signature plaintiff needed to be able to

24    marry.  Plaintiff alleges that San Joaquin County Superior Court Judge Fattarsi issued an order

25    allowing plaintiff to have a day pass in order to marry his fiancé, Fidelia D'Angel Armijo, but the

26    clerk at the Solano County courthouse informed Armijo that the clerk could not process the

27    necessary paperwork because defendant had not signed it.  ECF No. 14 at 3-4.

28    ////

2

In screening the complaint pursuant to 28 U.S.C. § 1915A(a), the court found that:

> Plaintiff's amended complaint alleges that he has been denied the right to marry for no legitimate reason. ECF No. 14 at 3. While most of the allegations are too vague and conclusory to establish a violation of this right, the complaint does set forth sufficient detail to state a potentially cognizable claim against defendant Ebert. According to plaintiff, a judge has issued an order allowing him a day pass in order to marry his fiancé. *Id*. at 8. As best the court can tell, plaintiff and his fiancé made it the Solano County courthouse to be married,[2] but were turned away by the clerk. *Id*. at 4. The Clerk informed plaintiff that his paperwork could not be processed because defendant Ebert, a correctional counselor at the California Medical Facility, did not sign it. *Id*. Plaintiff alleges that defendant Ebert did so deliberately so as to deny plaintiff his right to marry. *Id*.

ECF No. 16, at 1-2.  The FAC alleges that the couple were still unable to marry after "a year & 4 months of attempts," *id*. at 4, or perhaps for over two years.  ECF No. 14 at 4, 5, 7, 12.  The FAC requests damages and an order allowing plaintiff to be married.  ECF No. *Id*. at 5.  However, plaintiff and Armijo have since been married and that request is moot.

II.    Background and Judicial Notice Request

    A.    Judicial Notice of State Court Proceedings

    The FAC and defendant's motion to dismiss both rely on the content of records created in state court proceedings.  Indeed, the court finds these records to be material to the disposition of this motion.  Further, these documents are official public records subject to judicial notice. Accordingly, defendant's request for judicial notice, ECF No. 32-3, is granted.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986) (a court may take judicial notice of court records); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).  Additionally, as discussed below the court takes judicial notice of a state court order confirming plaintiff's marriage to his fiancé, Armijo, and the website published by Solano County setting forth its procedures for a marriage to an incarcerated person.

////

////

---

[2]  The FAC appeared at the time of screening to allege that the couple, jointly, may have been turned away by the clerk.  ECF No. 16 at 2 (describing the claim stated in the FAC).  On the more complete record now before the court, it was Armijo who went to the courthouse to have the marriage according to Solano County's procedures, described *infra*.  *See also* ECF No. 33 at 7.

1    The state court records include orders entered in two separate criminal cases, each

2  pending at the time against the plaintiff and his fiancé, Armijo, which had an impact on the

3  procedures by which the couple were ultimately able to marry.  The two separate criminal

4  proceedings are: (1) a criminal case against plaintiff's fiancé, docketed at *State of California v.*

5  *Dangel Armijo*, STK-CR-MI-2020-0013684 (San Joaquin Sup. Ct.) [hereinafter "*Armijo*'s

6  criminal case"]; and (2) the criminal case against plaintiff docketed at *State of California v.*

7  *Benjamin Gallegos*, STK-CR-FE-2020-0008430 (San Joaquin Sup. Ct.) [hereinafter "*Gallegos*'s

8  criminal case"].  *See* ECF No. 32-3.  As discussed below, information from these records relates

9  to the initially unsuccessful attempts by plaintiff and his fiancé, Armijo, to comply with state law

10  procedures for an inmate to marry and include a stay-away order against Armijo.  The court also

11  takes judicial notice of the records and order entered in *In re D'Angel Armijo and Benjamin*

12  *Gallegos*, STK-PR-BDM-2023-0000268 (2023 San Joaquin Sup. Ct.) [hereinafter the "Marriage

13  Recognition Petition"] that finally facilitated the couple's request to marry by establishing the

14  fact, date and place of plaintiff's marriage.  *See* ECF No. 32-3 at 13-30.

15    B.    *Armijo*'s Criminal Case Judgment Restricted Her CDCR Access

16    The records from *Armijo*'s criminal case indicates that she was charged on December 17,

17  2020, with a misdemeanor offense of "Intend To Deliver Cellphone/Devices/etc To Inmate."[3]

18  ECF No. 32-2 at 6.  A Minute Order entered at a hearing on that date indicates that Armijo was

19  out of custody on her own recognizance but with conditions of release and that a disposition of

20  the case was being contemplated that would result in a dismissal of the charge in October of the

21  following year assuming she met the conditions of release.  *Id.* at 8 ("Possible Dismissal set for

22  10/21/2022 at 8:30 AM, remains as set.").  That order also shows that a wedding was

23  contemplated, but during the interim Armijo was ordered to stay away from the prison.

24  Specifically, the order states "Defendant to stay away all CDCR custodial facilities in the State of

25  California.  If wedding is arranged, case may be calendared to obtain order permitting wedding."

26

27    [3] It appears that Armijo was charged under California Penal Code Section 4576
     (Unlawful possession with intent to deliver or delivery of cellular telephone or wireless
28  communication device, or component thereof, to inmate or ward).

4

1   *Id.*

2          The charges were ultimately dismissed on October 21, 2022, as had been contemplated in

3   the minute order entered at the December 17, 2020 hearing.  *Id.* at 6.

4          C.      Procedures For a Prisoner To Marry

5          There are two separate procedures for incarcerated persons in California to marry.  First,

6   under California law, it is possible to arrange a marriage ceremony at the prison facility where the

7   inmate is incarcerated.  Cal. Code Regs. tit. 15, § 3216(c).  The marriage must have been pre-

8   approved by the designated official at the prison facility.  *Id*. at § 3216(b).  The non-incarcerated

9   spouse may attend in person at the facility.  *Id.* at § 3216(e).  Second, it is also possible for the

10  inmate to obtain a marriage license and to marry *in absentia* by way of an Affidavit for Physical

11  Inability to Appear, under a process by which the non-incarcerated person (Armijo in this

12  instance) would appear at the county clerk's office with a wedding officiant, the marriage license,

13  and the notarized affidavit of the inmate (plaintiff) who will not be present at the courthouse.

14  Solano County published on its website the procedures for arranging such a marriage and the

15  court takes judicial notice of those procedures.

16         The website explains the *in absentia* procedure as follows:

17         **What is the process for obtaining a marriage license if my partner is
           incarcerated at The County Jail or State Prison?**
18         If either party to a marriage is incarcerated, the marriage license application must
           be completed through Prison or Jail officials. An Affidavit for Physical Inability to
19         Appear must be completed and signed by both applicants and the person who is
           solemnizing their marriage. The inmate's signature MUST also be authenticated
20         by a notary or a court. The person who is not incarcerated must come to the
           County Clerk's office WITH the person who is solemnizing the marriage and will
21         bring the completed marriage license application along with the completed
           Affidavit for Physical Inability to Appear, a Notary authentication or court
22         authentication of the inmate's signature, a photo ID for the person who is not
           incarcerated, a copy of dissolution papers (if necessary), and the marriage license
23         fee.

24  https://www.solanocounty.com/faqs/answers.asp?id=166  [emphasis in original] (last accessed

25  July 15, 2024).  Solano County's procedure is consistent with California Family Code § 426,

26  setting forth the requirements for issuance of a marriage license when one party is physically

27  unable to appear before the county clerk, including because one or both parties to be married is

28  incarcerated.  The state regulation requires that the person solemnizing the marriage must present

                                                      5

an affidavit to the clerk.  The affidavit must be signed by both parties to the marriage as well as the person solemnizing the marriage and authenticated by a notary public.

The FAC somewhat conflates these two distinct procedures.  Although it is not clear from the FAC, it appears plaintiff and Armijo: (1) did not make arrangements and never sought or obtained an order permitting Armijo to attend a marriage ceremony at the prison facility according to the former procedure; and (2) were frustrated in their attempt to use the latter, affidavit procedure for an *in absentia* marriage.  Plaintiff asserts the defendant is responsible for their inability to complete the process sooner.

D.      The Marriage Has Taken Place

Ultimately, plaintiff and Armijo[4] were able to marry on February 24, 2023.  The circumstances of the marriage are in the records of the Marriage Recognition Petition.  *See* ECF No. 32-3 at 19, 28-29.  The couple obtained the necessary orders for permission to marry through *Gallegos*'s criminal case, presided over by Judge Michael Coughlan.  On February 16, 2023, Judge Coughlan held a hearing and entered an order to transport plaintiff to court for the marriage ceremony.  *Id*. at 18.  Judge Coughlan issued a marriage license and solemnized the marriage in open court on February 24, 2023.  *Id*. at 16; *see also id*. at 19-22 (marriage license).

On March 15, 2023, the couple petitioned the San Joaquin Superior Court to establish the fact, date, and place of Armijo's marriage to plaintiff as having occurred on February 24, 2023 in San Joaquin County.  *Id*. at 14, 15.  The Marriage Recognition Petition was approved, and an order establishing the fact of plaintiff's marriage to Armijo was entered on April 24, 2023.  *Id*. at 28, 29.

E.      Plaintiff Has Been Housed in a Series Of Different Prison Facilities

During the time plaintiff sought to marry, he was not continuously housed at the prison facility where defendant is employed.  This information is relevant to the analysis of plaintiff's claim that the defendant unconstitutionally interfered with plaintiff's Fourteenth Amendment

---

[4]  Armijo appears to have changed her last name to Gallegos upon her marriage.  *See* ECF No. 32-3 at 18.  For clarity and consistency, she is identified by the surname Armijo throughout this analysis.

6

1    right to marry.

2         The FAC alleges that plaintiff was first denied permission to marry while he was housed

3    at the California Health Care Facility (CHCF) in Stockton.  ECF No. 14 at 4:18-21.  Allegedly,

4    permission was denied was because Armijo worked at CHCF as a psych tech.  *Id*.  Nothing in the

5    record indicates that defendant was involved in, or responsible for, events that may have occurred

6    at CHCF.

7         Defendant is and was employed at the California Medical Facility (CMF) located in

8    Vacaville.  ECF No. 32-1 at 7; ECF No. 34 at 2 *see also* https://www.cdcr.ca.gov/adult-

9    operations/list-of-adult-institutions/ (locations of California prison facilities).  Plaintiff left CHCF

10   at an unspecified date, and he was "eventually" transferred to CMF.[5]  ECF No. 14 at 4:19-20.

11   Plaintiff's claim against defendant is predicated on his allegations regarding events at CMF.  The

12   record does not make clear precisely when plaintiff arrived at CMF, the length of his stay at

13   CMF, or when he left CMF.  However, a broadly stated timeline relevant to resolution of

14   plaintiff's claim can be gleaned from the record and plaintiff's pleadings, as described in Part IV

15   below.

16        By the time plaintiff filed his initial complaint in this lawsuit on October 7, 2022, he had

17   left CMF and was housed at the California State Prison, Sacramento (CSP, Sacramento).[6]  ECF

18   No. 1-1.  Plaintiff was still housed at CSP, Sacramento when he married Armijo on February 24,

19   2023.  He has remained housed at CSP, Sacramento throughout the course of this lawsuit, except

20   for some weeks in about January and February, 2024, when the record shows plaintiff's brief

21   return to CMF, as discussed in Part V(E) below.

22   ////

23   ////

24   ////

25   _____

26        [5]  Plaintiff's qualifier ("eventually") seems to indicate that he was not moved directly from CHCF to CMF, and he may have been housed at some other facility(ies) in the interim.

27        [6]  The parties seem to agree that plaintiff was also housed at the county jail for some period between his stay at CMF and his arrival at CSP, Sacramento.  *See* ECF No. 34 at 3 (citing

28   ECF No. 33 at 3:14-18).

1    III.    Defendant's Motion

2           A.    The Briefing on The Motion To Dismiss

3           Defendant moves to dismiss the FAC pursuant to Rule 12(b)(6) for failure to state a claim.

4    Defendant maintains that the allegations of the FAC, together with judicially noticeable facts,

5    demonstrate that plaintiff's right to marry was not substantially burdened and was at most delayed

6    by fourteen months.  Defendant further contends that any delay was occasioned by the criminal

7    charges against Armijo of smuggling cell phones into prison, and the resulting order to stay away

8    from all CDCR facilities pending those charges.  Defendant argues that the state court records

9    submitted with the motion demonstrate definitively that the defendant was not the cause of delay

10   in plaintiff being able to marry.  Defendant also argues, correctly, that plaintiff has since married

11   and the claim for injunctive relief is moot.  Finally, defendant argues that she is entitled to

12   qualified immunity.

13          Defendant argues that plaintiff was moved out of the facility where she is employed

14   (CMF) and relocated to CSP, Sacramento by October 21, 2022.[7]  This was the date the criminal

15   case against Armijo was dismissed, so defendant was no longer involved in any events after the

16   stay away order lapsed.  ECF No. 34 at 2; *see also* ECF No. 32-1 at 7.

17          Plaintiff's response to the motion to dismiss generally reiterates and slightly expands upon

18   the bare allegations of the FAC, arguing that the defendant should have "orchestrate[d] a means

19   for notary" to validate and confirm the couple's intent to marry.  ECF No. 33 at 2:11-13.  Plaintiff

20   argues that defendant failed to sign the "notary/marriage license," *id*. at 5:19-20, and "made it

21   very difficult" by canceling plaintiff's first appointment.  According to plaintiff's opposition brief

22   Armijo received "the notary" in the mail but it was unsigned.  But Armijo did not discover this

23   until she arrived at the courthouse.  Plaintiff assert in his opposition that Armijo rejected the

24   clerk's suggestion to go to the prison to obtain the signature because she was not allowed to enter

25   the prison.  By plaintiff's account, Armijo took this to mean she was being "set up" and somehow

26   ─────────────
        [7]  This record does not show exactly when plaintiff was moved out of CMF.  But it does
27   show that October 7, 2022 was the outside limit of plaintiff's stay at CMF, because the record
     clearly indicates that plaintiff was already at CSP, Sacramento as of October 7, 2022 when he e-
28   filed his original complaint.  ECF No. 1-1.

                                                     8

1    shows "just how intentional [defendant's] misconduct was." *Id*. at 7:13 through 8:1.

2            B.      Plaintiff's Motion to Add Defendants and Exhibits, ECF No. 36

3            After the briefing on defendant's motion to dismiss plaintiff filed his "Amendment In

4    Citing New Defendants," which the court construes as a motion to further amend the FAC.  ECF

5    No. 36.  Plaintiff seeks to add claims against: (1) Theresa Williamson, who is the supervisor at

6    the recorder's office in San Joaquin County; (2) Sarah Lin, who is the San Joaquin Clerk; (3)

7    "Sacramento;" and (4) CDCR.  *Id.* at 1-2.  Plaintiff also seeks to add a claim against defendant

8    Ebert for failing to perform her duty.  *Id*. at 2.  Defendant does not oppose plaintiff's motion.

9    ECF No. 41 at 2.  Furthermore, plaintiff's motion seeks to attach to his complaint exhibits that are

10   relevant to resolving plaintiff's claim against Ebert.  For the reasons explained below, the court

11   grants the motion to add the exhibits but recommends denial of the request to add additional

12   defendants.

13                   1.      The Proposed Further Amended Claim Against Ebert and Exhibits

14           The claim that plaintiff proposes to "add" against Ebert is not substantively different from

15   plaintiff's claim alleged against Ebert in his FAC.  Plaintiff merely reiterates his allegations that

16   Ebert failed to perform her duty and thereby violated plaintiff's fundamental right to be married

17   under the Fourteenth Amendment.  ECF No. 36 at 2, 3.  For this reason, the amendment of the

18   claim against Ebert does not run afoul of the court's screening order prohibiting amendments that

19   allege new, unrelated claims.  ECF No. 16 at 3.  To the extent that adding his exhibits could be

20   characterized as an amendment to plaintiff's claim in the FAC against Ebert, leave should be

21   freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Plaintiff's proposed amendment

22   to add the exhibits provides information that is material to resolving plaintiff's claim against

23   Ebert and the request is granted.

24           Significantly, plaintiff attaches a letter he received from Ebert dated July 2, 2021,[8] which

25   states in its entirety:

26   _____

27           [8] As of July 2, 2021 Armijo was still under the stay-away order that was entered as a
     condition of her OR release.  Her case was not dismissed until October 21, 2021.  ECF No. 32-3
     at 6.

28

> You have submitted a request for a notary appointment due to needing an inability to appear document notarized for your marriage packet.  Before you can be scheduled for any part of your marriage packet to be notarized you must have all you need to [be] completed with Sgt. Vasquez the Marriage Coordinator.  As of 6/24/21, you do not have the needed documents on file with Sgt. Vasquez so you cannot be schedule[d] for notary.  Please contact Sgt. Vasquez to inquire what you need to do to get ready for your packet to be notarized.  Once you have completed all of the steps with Sgt. Vasquez resubmit your notary request to the Litigation Coordinator's Office.

ECF No. 36 at 5.  This is the only item in the entire record that attributes any specific (and date-specific) action to Ebert, who was a litigation coordinator at the prison.  It shows that the only role Ebert had in this matter was to inform plaintiff that his "packet" submitted with his request for an appointment with a notary was incomplete and who plaintiff needed to contact to correct the matter.  The letter in no way supports an inference that Ebert improperly impeded plaintiff's attempt to marry.

Plaintiff further includes a notarized acknowledgment dated August 27, 2021, less than 2 months after Ebert's letter, explaining how to obtain such a document for his marriage packet.  ECF No. 36 at 10.  A notary (not Ebert) acknowledged a document described as an "affidavit of inability to appear and request for issuance of a public marriage license."  *Id*.; *see also id*. at 9 (a partially illegible document apparently captioned "affidavit of [illegible] to appear and request for issuance [illegible] marriage license" appears to be the document referenced in the notarized acknowledgment).

## 2.    The Proposed Addition of Claims Against Williamson And Lin

Plaintiff alleges that Williamson and Lin refused Armijo's attempt to record the marriage performed by Judge Coughlan.  ECF No. 36 at 3.  Plaintiff claims Williamson told Armijo that Judge Coughlan did not have authority and she allegedly grabbed the papers from Armijo's hands ("coming from behind her desk to do so") and refused to record the marriage license.  *Id*. at 3, 17.

Plaintiff's motion to add defendants Williamson and Lin would add new, unrelated claims.  *See* Fed. R. Civ. P. 20(a)(2)(B); ECF No. 16 at 3.  This he cannot do.  Furthermore, his proposed claims against Williamson and Lin clearly cannot survive screening under 28 U.S.C. § 1915A because Williamson and Lin have absolute quasi-judicial immunity for their decision

1    whether to record the marriage ceremony performed by Judge Coughlan.  A clerk's decision

2    about whether a filing should be rejected under applicable rules is an integral part of the judicial

3    process for which the clerk has quasi-judicial immunity.  *Acres Bonusing, Inc. v. Marston*, 17

4    F.4th 901, 916 (9th Cir. 2021) ("Court clerks have absolute quasi-judicial immunity from

5    damages for civil rights violations when they perform tasks that are an integral part of the judicial

6    process." (internal quotation marks and citations omitted)).  *Id*.  Accordingly, any amendment to

7    add claims against Williamson and Lin would be futile and the motion to add them must be

8    denied.

9                              3.    The Proposed Claims Against "Sacramento" And CDCR

10          Plaintiff's basis for his proposed claims against Sacramento and CDCR is his allegation

11   that he was told by a Captain Williams that "the Director of CDCR/Governor (Higher-Ups)

12   ordered all institutions to refuse me my visits and marriage approval throughout all the state of

13   California."  *Id*. at 4.  Also, plaintiff claims Armijo was told on April 23, 2023 that she would

14   receive a marriage certificate in four weeks, but the marriage certificate had not arrived as of

15   August 16, 2023.[9]  *Id*. at 18.  The request to add these new defendants must also be denied.

16          Plaintiff's claim against CDCR was already screened out pursuant to 28 U.S.C. § 1915A.

17   ECF No. 16 at 4 n.2.  He cannot revive his claim against CDCR via amendment.  Furthermore,

18   plaintiff cannot allege claims on behalf of Armijo.  He also fails to state any plausible basis for a

19   claim against "Sacramento" and therefore this claim does not survive screening for the same

20   reasons plaintiff's claim against CDCR was screened out.

21                              4.    Summary

22          For the above reasons, plaintiff's motion to amend, at ECF No. 36, is granted in part and

23   that the exhibits relevant to his Fourteenth Amendment claim against Ebert will be included with

24   his complaint.  It is further recommended that plaintiff's motion to amend to add claims against

25   additional defendants (Williamson, Lin, Sacramento, and CDCR) be denied.

26   ────────────────────

27          [9] As relief for these proposed claims plaintiff seeks injunctive relief to have his marriage
     recorded; injunctive relief to have video visits with Armijo; and damages of $1,000,000 to
     compensate plaintiff and Armijo ("I/we now seek []").  *Id*. at 19.

28

1    The operative complaint before the court thus comprises: (1) the FAC, ECF No. 14; and

2    (2) the exhibits attached to plaintiff's motion, ECF No. 36.

3            C.      Rule 12(b)(6) Standard

4            In considering a motion to dismiss, the court must accept as true the allegations of the

5    complaint in question, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976),

6    construe the pleading in the light most favorable to the party opposing the motion and resolve all

7    doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S.

8    869 (1969). Further, "a document filed pro se is 'to be liberally construed.'" *Erickson v.*

9    *Pardus*, 551 U.S. 89, 93-94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

10   However, "a liberal interpretation of a civil rights complaint may not supply essential elements of

11   the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266,

12   268 (9th Cir. 1982).

13           To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege enough specific

14   facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon

15   which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007) (citation omitted);

16   *see also* Rule 8(a). "Vague and conclusory allegations of official participation in civil rights

17   violations are not sufficient to withstand a motion to dismiss." *Ivey*, 673 F.2d at 268. Rather, "a

18   complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on

19   its face.' A claim has factual plausibility when the plaintiff pleads factual content that allows the

20   court to draw the reasonable inference that the defendant is liable for the alleged misconduct."

21   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

22           D.      The Right to Marry Under The Fourteenth Amendment

23           Marriage is a fundamental right protected by the due process clause of the Fourteenth

24   Amendment. *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978). The states may impose "reasonable

25   regulations that do not significantly interfere with decisions to enter into the marital relationship,"

26   *id*. at 386, and that do not "unnecessarily impinge on the right to marry," *id*. at 388, without

27   violating this fundamental due process right.

28   ////

1    Prisoners retain their fundamental right to marry while incarcerated but the right "is

2  subject to substantial restrictions as a result of incarceration."  *Turner v. Safley*, 482 U.S. 78, 95

3  (1987).  The constitutionality of a prison regulation that restricts a prisoner's right to marry is

4  valid if reasonably related to legitimate penological interests.  *Id*. at 89.  The reasonableness of

5  the restriction is assessed using *Turner*'s standards:

6         … the existence of a "valid, rational connection between the prison regulation and
           the legitimate governmental interest put forward to justify it"; "the impact
7         accommodation of the asserted constitutional right will have on guards and other
           inmates, and on the allocation of prison resources generally"; and "the existence of
8         obvious, easy alternatives" as evidence that the regulation "is an 'exaggerated
           response' to prison concerns."
9

10  *Bull v. City and County of San Francisco*, 595 F.3d 964, 973 (9th Cir. 2010) (quoting *Turner*, 482

11  U.S. at 89-91).

12  IV.    Analysis

13     A threshold problem with the FAC is its lack of specific factual allegations showing that

14  the defendant wrongfully caused the alleged delay in plaintiff being able to marry.  The few facts

15  specified in the FAC are almost devoid of relevant dates and sequential time frames.  Beginning

16  with plaintiff's allegations that his effort to marry Armijo had been frustrated for a year and four

17  months, or perhaps for 2 or more years, it is unclear what he alleges defendant did to prevent the

18  marriage from occurring sooner.  See ECF No. 14 at 3, 4, 5, 7, 12.  However, plaintiff's own

19  exhibits to his complaint and the judicially noticed state court records fill in key details showing

20  that the defendant did not wrongfully interfere with plaintiff being able to marry.

21     The focus of the FAC is an allegation that defendant interfered with plaintiff's right to

22  marry by wrongfully refusing without justification to sign a "Notary document as a witness," a

23  signature plaintiff needed to be able to marry.  Intertwined with that is an allegation that a state

24  court judge issued an order allowing plaintiff to have a day pass in order to marry his fiancé,

25  Fidelia D'Angel Armijo, but the clerk at the Solano County courthouse informed Armijo that the

26  clerk could not process the necessary paperwork because defendant had not signed it.  ECF No.

27  14 at 3-4.  Yet plaintiff's exhibits and the state court records demonstrate that neither allegation is

28  accurate.

A timeline can be constructed from parsing those records in conjunction with the FAC. Viewed in the light most favorable to plaintiff, they indicate that: (1) the marriage was "original[ly] deni[ed]" at CHCF at an uuspecified date because of security risk factors,[10] ECF No. 14 at 4:18; (2) "eventually" plaintiff was moved to CMF where defendant is employed, *id*. at 4:19-20; (3) plaintiff was at CMF in July 2021 when defendant provided him with a letter outlining the steps necessary to obtain the notarized document for his marriage packet, presumably to fulfill the requirements for the *in absentia* marriage procedure at the courthouse, ECF No. 36 at 5; (4) in July and August 2021 plaintiff and Armijo appear to have made some effort to execute the steps outlined in defendant's letter, including correspondence with Vasquez, *see generally id*. at 6-15; (5) the couple obtained a notarized acknowledgment, which was notarized by someone other than defendant, on August 27, 2021, *id*. at 10; (6) on December 17, 2021, Judge Fattarsi ordered Armijo to stay away from CDCR facilities and also indicated in his order that the marriage had not yet been arranged, ECF No. 32-2 at 8; (7) plaintiff was transferred out of CMF at an unknown date; (8) plaintiff was housed at CSP, Sacramento as of no later than October 7, 2022 when he e-filed his complaint, ECF No. 1-1; and (9) at some unspecified date, presumably while plaintiff was still housed at CMF, Armijo arrived at the Solano County courthouse, with clergy, and unsuccessfully attempted to have the marriage performed according to Solano County's *in absentia* procedure, but the clerk[11] informed Armijo that the necessary paperwork could not be processed, allegedly because defendant had not signed it.

As for the original denial of permission to marry at a previous facility (CHCF) based on security risk factors, there are no facts indicating that this denial, and any initial delays it caused, can be attributed to defendant.  Defendant did not work there and there is no other factual predicate to support an inference that the defendant caused the denial.

////

---

[10]  Plaintiff's fiancé, Armijo, worked at that facility at the time.  ECF No. 14 at 4:18.

[11]  The Solano County clerk who rejected Armijo's paperwork was not Williamson or Lin, who are employed at the San Joaquin County clerk's office.

As for events that occurred at CMF, defendant's letter of July 2, 2021 indicates that plaintiff was not being denied permission to marry, but to the contrary that defendant advised him of necessary procedural steps he could take to be able to marry.

The state court records show that plaintiff and his fiancé had two clear options available to them.  As noted, one option would have involved Armijo attending a marriage ceremony in person at the prison facility, Cal. Code Regs. tit. 15, § 3216, which would have required Armijo to request an order modifying her release conditions to allow her presence at the prison.

The other option was to use Solano County's procedure for marriage to an absent incarcerated person by affidavit outlined in the Solano County website pursuant to California Family Code § 426.  Under that process Armijo and the officiant could go to the courthouse with the marriage license and Affidavit for Physical Inability to Appear containing the notarized signature of the plaintiff attesting to his incarcerated status.

The FAC is unclear which procedure the defendant allegedly hindered, but there is no clear indication the couple ever pursued the former option offered by Judge Fattarsi to have the marriage at plaintiff's prison facility, even after the prohibition on Armijo's presence was removed as of October 21, 2022, and even though plaintiff was no longer at CMF (where defendant was employed) by then.  Plaintiff appears to assume, incorrectly, that Judge Fattarsi's order of December 17, 2021 gave a sort of go-ahead for his marriage (which was ultimately officiated by Judge Coughlan on February 24, 2023[12]).  But even if plaintiff were correct, he has not coherently alleged that defendant wrongfully withheld assistance or approval for an on-site ceremony.  It is however clear that Judge Fattarsi's December 17, 2021 stay-away order in Armijo's criminal case did not set any date or time for an eventual marriage ceremony, and did not mandate that defendant take any specific action.

////

---

[12] The avenue through which the couple finally accomplished their marriage was provided, perhaps unexpectedly, by Judge Coughlan under the jurisdictional umbrella of *Gallegos*'s criminal case.  This method may have been somewhat out of the ordinary.  *See* ECF No. 32-3 at 15.  Judge Coughlan nevertheless effected the marriage, as established by the April 24, 2023 order issued in the Marriage Recognition Petition.

As best as can be discerned from the FAC and the records submitted by defendant, it is the latter, *in absentia* affidavit process that plaintiff claims the defendant frustrated.  It appears that Armijo's trip to the courthouse was an attempt to accomplish the marriage according to Solano County's marriage by affidavit procedure: "My fiancé accomplished getting the assistance of a clergy & upon receiving the notary agreed to meet the clergy at the Solano court."  ECF No. 14 at 4; *see also* ECF No. 33 at 7 (Armijo traveled to meet the clergy at the courthouse in Solano).  The allegation that Armijo arrived at the courthouse with clergy indicates that this was an attempt to have an actual marriage ceremony take place according to Solano County's procedure, and not just an effort to have the county clerk provide a marriage license as contemplated by title 15 of the California Code Regulations, § 3216(b).  The most generous reading of plaintiff's allegations about this avenue is that at some point on or before June 24, 2021 and no later than October 7, 2022, plaintiff attempted to secure defendant's assistance to acquire the necessary documentation (i.e., the "marriage packet") for the marriage to take place at the courthouse according to Solano County's procedures.  Defendant allegedly canceled an initial appointment, and it was rescheduled a month or two later.  When Armijo arrived at the Solano County courthouse accompanied by the officiant, the clerk rejected the paperwork Armijo presented, allegedly because defendant had not signed it, and the clerk refused to allow the marriage ceremony.  ECF No. 14 at 4.

Although the FAC predicates the claim against defendant on an alleged duty by defendant to sign the document, plaintiff's response to the motion to dismiss broadens his focus to a contention that defendant should have "orchestrated" the proper completion of the necessary paperwork.  ECF No. 33 at 2:11-13.  Plaintiff and Armijo did obtain an affidavit of inability to appear as of August 27, 2021.  It is unclear whether or when Armijo presented this document at the courthouse, but whatever documents Armijo presented, the clerk apparently deemed them unsatisfactory.  It becomes clear that plaintiff's claim is that defendant should have undertaken to ensure the couple had the necessary paperwork to satisfy the clerk.  Plaintiff also seems to believe that Judge Fattarsi's stay-away order imposed this obligation on defendant.  But the text of Judge Fattarsi's order shows this is clearly not the case.

16

Plaintiff also suggests that given his right to marry defendant necessarily had a duty to arrange for the marriage, possibly even completing or signing the couple's required paperwork to the satisfaction of the courthouse clerk.  This premise, too, is flawed.

The state and the prison can impose reasonable regulations and even substantial restrictions that do not unnecessarily impinge the right to marry.  This includes imposing reasonable procedural requirements on inmates seeking to marry.  The instructions to plaintiff described in defendant's letter are consistent with California's procedural scheme for having an *in absentia* marriage in § 426 of the California Family Code and therefore also align with legitimate penological interests to implement state regulations.  Plaintiff has not shown that the procedural steps unconstitutionally restricted his right to marry.  Further, defendant's rescheduling an appointment is not facially unduly burdensome.  Nor has plaintiff alleged any action or omission of defendant's that amounted to a violation of plaintiff's Fourteenth Amendment due process right to marry.  Although the FAC makes a vague and conclusory reference to retaliation, no facts are alleged to establish any such motive.  Nothing in defendant's letter remotely supports the allegation of a retaliatory motive, or even an attempt to hinder plaintiff's efforts.  To the contrary, the letter demonstrates an attempt to help by referring plaintiff to the Marriage Counselor, Sgt. Vasquez "to inquire what you need to do to get ready for your packet to be notarized."  ECF No. 36 at 5.  And contrary to plaintiff's assertion, defendant had no obligation to orchestrate the process on his behalf.

In summary, the FAC and plaintiff's exhibits, together with the state court records, defeat any claim that the defendant improperly impeded or delayed plaintiff's right to marry.  The initial denial of plaintiff's marriage by officials at CHCF cannot plausibly be attributed to defendant.  The documents plaintiff has included with his own filings suggest that at CMF defendant attempted to guide plaintiff through the requirements to have the marriage.  For whatever reason the Solano County clerk rejected the couple's proffered documents on Armijo's single attempt, plaintiff has not plausibly demonstrated this amounted to a violation of his due process rights that was caused by defendant.  The couple seems to have abandoned their efforts to use the *in absentia* procedure, even though plaintiff was moved to a different prison facility away from

1    defendant's supervision as of no later than October 7, 2022.  Any further delay in having the

2    marriage after plaintiff was moved away from CMF cannot plausibly be attributed to defendant.

3         Plaintiff has not shown a facially plausible basis for his claim that defendant violated his

4    fundamental right to marriage under the Fourteenth Amendment.  Therefore, the operative

5    complaint (the FAC and additional exhibits) cannot survive this motion and must be dismissed for

6    failure to state a claim.  Furthermore, the record—including plaintiff's own exhibits--

7    demonstrates that he cannot allege facts to cure these defects and further amendment of the

8    operative complaint would be futile.  *See Ctr. For Bio. Diversity v. United States Forest Serv.*, 80

9    F.4th 943, 956 (9th Cir. 2023) ("Amendment is futile when 'it is clear … that the complaint could

10   not be saved by any amendment.'" (quoting *Armstrong v. Reynolds*, 22 F. 4th 1058, 1071 (9th

11   Cir. 2022))).

12        Because the complaint must be dismissed for failure to state a claim, the court does not

13   reach defendant's argument for qualified immunity.

14   V.    <u>Other Pending Motions</u>

15        A.    <u>Defendant's Motion to Strike Pleadings, ECF No. 48</u>

16        Defendant argues that plaintiff's pleading docketed at ECF Nos. 43 should be stricken as

17   an unauthorized (and duplicative) sur-reply, and plaintiff's pleadings docketed at ECF Nos. 44-47

18   should be stricken as is nearly duplicative of other pleadings.  ECF No. 48 at 1.  It is true that the

19   pleadings in question are some combination of unauthorized sur-replies, redundant, and/or nearly

20   duplicative of other pleadings.  ECF Nos. 43 and 46 are unauthorized sur-replies to defendant's

21   motion to dismiss and are themselves duplicative and redundant of earlier pleadings.  ECF No. 44

22   is duplicative of ECF No. 36; and ECF No. 45 is duplicative of ECF No. 38.  ECF No. 47

23   attempts to supply a proposed order for injunctive relief that was not provided when plaintiff filed

24   his motion at ECF No. 38.

25        The court may strike any redundant matter in the pleadings.  Fed. R. Civ. P. 12(f).  The

26   pleadings docketed at ECF Nos. 43, 44, 45, are 46 are redundant.  The defendant's motion to

27   strike is granted in part as to ECF Nos. 43, 44, 45, and 46.

28   ////

B.     Plaintiff's Request for Judicial Notice, ECF No. 49

In his request for judicial notice, plaintiff claims that the reason he has made duplicative filings is that Armijo was unable to verify with the clerk's office that plaintiff's pleadings had been received.  ECF No. 49 at 1.  Plaintiff asks the court to not dismiss them.  *Id*. at 2.  Plaintiff's explanation for the duplicative filings is noted.  His request for judicial notice is otherwise denied.  Striking the duplicative filings is not the same as dismissal.  It just means the court will only address motions and other pleadings once, the first time the motion/pleading is filed.  Any duplicative motion/pleading may be stricken because the content of the motion/pleading is addressed the first time it is presented to the court.

C.     Plaintiff's First Unauthorized Sur-reply, ECF No. 35

Plaintiff's first unauthorized sur-reply to defendant's motion to dismiss was filed at ECF No. 35.  The unauthorized sur-reply is virtually identical to plaintiff's response, filed at ECF No. 33 and is stricken as duplicative.  Furthermore, Local Rule 230(l), governing prisoner actions, does not provide for the filing of a sur-reply, and Local Rule 230(m) provides that "[a]fter a reply is filed, no additional memoranda, papers, or other materials may be filed" except for two exceptions, neither of which apply here.  Accordingly, plaintiff's unauthorized sur-reply, ECF No. 35, is stricken for this reason as well.

D.     Plaintiff's Motion for Injunctive Relief, ECF No. 38

Plaintiff moves for preliminary injunctive relief permitting him to have video visits with Armijo.  ECF No. 38.  Defendant indicates she will not respond unless ordered to do so.  ECF No. 42.  This is relief that plaintiff has requested in his separate lawsuit docketed at *Gallegos v. Ebert*, 2:24-cv-01676-DJC-JDP (E.D. Cal. filed June 11, 2024) [hereinafter "*Ebert II*"].  The injunctive relief plaintiff requests is unrelated to his claim against Ebert in this lawsuit.  Futher, plaintiff fails to meet the minimum threshold for merit to satisfy the standard for a preliminary injunction.  At an irreducible minimum, he must demonstrate that there is at least a fair chance of success on the merits. *Johnson v. California State Board of Accountancy*, 72 F.3d 1427, 1430, 1433 (9th Cir.1995); *Sports Form, Inc. v. United Press International*, 686 F.2d 750, 753 (9th Cir.1982).  As discussed above, his complaint must be dismissed for failure to state a claim and he has shown no

1    likelihood of success on the merits of any claim.

2          Accordingly, plaintiff's motion for preliminary injunctive relief, ECF No. 38, must be

3    denied.

4          E.      Plaintiff's Motion to Consolidate, ECF No. 53

5          Plaintiff asks the court to consolidate this lawsuit with the lawsuit he has filed at *Ebert II*,

6    in which he alleges that defendant retaliated against him after he was briefly moved back to CMF

7    from about January 28 to the end of February, 2024,[13] by refusing to allow plaintiff to have legal

8    phone calls and video visits with Armijo.  *Ebert II*, ECF No. 1.  Defendant opposes consolidation

9    because: (1) *Ebert II* is pending screening and it is unclear what parties and claims may survive

10   the screening process; (2) *Ebert II* alleges claims against additional defendants who are not

11   parties to this action; and (3) events alleged in *Ebert II* took place more than a year after the FAC

12   was filed.

13         The court may consolidate actions that involve common questions of law of fact.  Fed. R.

14   Civ. P. 42(a).  "District courts enjoy substantial discretion in deciding whether and to what extent

15   to consolidate cases."  *Hall v. Hall*, 584 U.S. 59, 77 (2018) (citing 9A C. Wright & A. Miller,

16   Federal Practice and Procedure § 2383 (3d ed. 2008)).  Here, plaintiff's motion to consolidate this

17   case with *Ebert II* should be denied.  Plaintiff's claims against Ebert in the two cases are premised

18   on different legal theories and materially different factual allegations occurring in completely

19   different time frames and entailing distinct evidentiary considerations.  Consolidation would also

20   re-set the timeline for resolution of plaintiff's Fourteenth Amendment claim against Ebert in this

21   lawsuit, would return this lawsuit back to the screening stage, and would potentially add claims

22   against different defendants based on different events and legal theories.

23   ////

24   ////

25   ////

26         [13]  Plaintiff supplies the month-long time frame for his return to CMF in his motion to
     consolidate.  ECF No. 53 at 1.  The year of plaintiff's brief return to CMF is understood to have
27   been January-February 2024, corresponding to plaintiff's notices to the court of his changes of
     address.  ECF Nos. 50, 52.
28

VI.    Order And Recommendations

      Accordingly, for all the reasons stated above, IT IS HEREBY ORDERED that:

      1.    Defendant's motion to strike pleadings, ECF No. 48, be GRANTED IN PART and that plaintiff's pleadings docketed at ECF Nos. 43, 44, 45, and 46 be STRICKEN.

      2.    Plaintiff's request for judicial notice, ECF No. 49, be DENIED as unnecessary.

      3.    Plaintiff's unauthorized sur-reply, ECF No. 35, be STRICKEN as unauthorized and duplicative.

      4.    Plaintiff's motion to add exhibits to his complaint, ECF No. 36, is GRANTED IN PART as provided in this order.

      Further,  IT IS HEREBY RECOMMENDED that:

      2.    Plaintiff's motion to add claims against defendants Williamson, Lin, Sacramento, and CDCR, ECF No. 36, be DENIED.

      3.    Defendant's motion to dismiss, ECF No. 32, be GRANTED WITH PREJUDICE.

      4.    Plaintiff's motion for preliminary injunctive relief, ECF No. 38, be DENIED.

      5.    Plaintiff's motion to consolidate this case with *Ebert II*, ECF No. 53, be DENIED.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 23, 2024

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE